## MACKAY v. FOX et al.

### (Circuit Court of Appeals, Ninth Circuit. February 16, 1903.)

### No. 867.

1. APPEAL—JUDGMENT—RECORD.

   Where a copy of the judgment was contained in the transcript, the beginning of which recited, "On the 8th day of March, 1892, the court rendered judgment herein, which is in words and figures as follows, to wit," and the petition for a writ of error referred to the judgment as "heretofore rendered," and the writ referred to the "rendition of judgment," and the clerk certified that the transcript which contained the judgment entry was a "full, true, and correct copy of the records and proceedings," as the same remains of record on file in the office of the clerk, the appeal was not subject to dismissal on the ground that it did not appear from the transcript that the judgment was entered of record.

2. SAME—FILING JUDGMENT.

   There is no provision in the Alaska Code (Act June 6, 1900, c. 786, 31 Stat. 379) requiring that a judgment shall be filed as a prerequisite to the perfecting of an appeal therefrom.

3. MINES AND MINING—ADVERSE CLAIMS—DEATH OF PARTIES—SURVIVAL OF ACTION.

   Rev. St. § 956 [U. S. Comp. St. 1901, p. 697], provides that if there are two or more plaintiffs or defendants in a suit where the cause of action survives to the surviving plaintiff or against the surviving defendant, and one or more of them dies, the action shall not be thereby abated, but, such death being suggested on the record, the action shall proceed at the suit of the surviving plaintiff against the surviving defendant. *Held*, that since, under Hills' Ann. Laws Or. §§ 369, 370, in force in Alaska at the time an action to determine an adverse claim to mining property was brought, such action survived the death of a party thereto, the fact that during the pendency of the action one of the two defendants died did not abate the action, but it was properly continued as against the surviving defendant.

4. SAME—NONJOINDER OF PARTIES.

   An action to determine an adverse claim to a mining property was not subject to dismissal for nonjoinder as a party plaintiff of a person acquiring an interest in the property after the commencement of the action.

5. SAME—MISJOINDER OF PARTIES.

   In an action to determine an adverse claim to mining property, the fact that parties were joined as plaintiffs who had parted with their interest in the subject-matter was no ground for dismissal.

**6. SAME—OBJECTIONS—TIME.**

An objection for nonjoinder or misjoinder of parties is too late when made for the first time at the trial of the cause.

**7. SAME — ADVERSE CLAIM — FILING — APPLICATION—AMENDMENT—PROCURING PATENT—EFFECT.**

Rev. St. § 2326 [U. S. Comp. St. 1901, p. 1430], provides that, after the filing of an adverse claim to mining property, "all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived." *Held,* that where, after the filing of an adverse claim to a mining property, and during the pendency of the action to establish the same, the adverse claimant filed an amended application with the Interior Department, and obtained a patent for adjoining land under such amended application, not including any of the land in suit, the obtaining of such patent did not operate as a waiver of his adverse claim.

In Error to the District Court of the United States for the District of Alaska, Division No. 1.

This action was begun by the defendants in error on April 27, 1896, under section 2326 of the Revised Statutes of the United States [U. S. Comp. St. 1901, p. 1430], to determine their adverse claim and their right of possession to a mining claim on Douglas Island, Alaska, known as "the Ready Bullion, No. 2, Lode Mining Claim," for a portion of which the plaintiff in error and another had applied for patent. The claim was located on February 4, 1886, by Frank Mahoney. On May 19, 1887, Mahoney conveyed a one-half interest to Geo. Beaumont. On May 31, 1887, Mahoney and Beaumont conveyed a one-half interest to W. A. Sanders and Geo. W. Garside. On April 17, 1893, Sanders conveyed a one-eighth interest to W. A. Thompson. On October 5, 1898, Sanders and Thompson conveyed a one-third interest to Minnie Ross Holman. In the year 1896 Sanders and Thompson obtained the interest of Mahoney and Beaumont by forfeiture. It thus appears that the conveyance to Minnie Ross Holman was made after the commencement of the action, and that at the time of the trial the estates of Mahoney and Beaumont had no interest in the claim.

Malony & Cobb, John Flournoy, and L. S. B. Sawyer, for plaintiff in error.

John G. Heid and Alfred Sutro, for defendants in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

A motion is made to dismiss the writ because it does not appear from the transcript that the judgment was ever filed or entered of record. We find no ground to sustain the motion. In the transcript appears a copy of the judgment, at the beginning of which it is recited that "on the 8th day of March, 1892, the court rendered judgment herein, which is in words and figures as follows, to wit." The petition for the writ of error refers to the judgment as "heretofore rendered." The writ refers to the "rendition of the judgment." The clerk's certificate certifies that the transcript which contains the judgment entry is a "full, true, and correct copy of the records and proceedings as the same remains of record and on file in the office of the clerk." It is thus made sufficiently clear that the judgment, a copy of which is found in the transcript, was the judgment of the court, and that it was rendered on March 8, 1902, and entered upon the journal; otherwise it could not be among the records in the

case. The Code of Alaska does not require that the judgment shall be filed. Act June 6, 1900, c. 786, 31 Stat. 379.

The action, as it was begun, was brought by the defendants in error against the plaintiff in error and Robert Duncan, Jr. Some two years later Robert Duncan, Jr., died. On December 2, 1901, more than two years after the death of Duncan, the defendants in error obtained leave to have the action continued as against J. P. Corbus, the administrator of Duncan's estate; but when the attention of the court was directed to section 35, part 4, of Carter's Annotated Code of Alaska, which provides that, in case of the death or disability of a party, the court may only within two years thereafter, on motion, allow the action to be continued by or against his personal representatives or successor in interest, the court on December 9, 1901, set aside the order which it had made reviving the case against the administrator, and thereupon, under authority of section 956 of the Revised Statutes [U. S. Comp. St. 1901, p. 697], held that the action should be continued, tried, and determined without the revival thereof, both as against the surviving defendant and others interested with him. This ruling, and the denial of his motion to dismiss the action on the ground that it had abated by Duncan's death, the plaintiff in error assigns as error.

Section 956 provides as follows:

"If there are two or more plaintiffs or defendants in a suit, where the cause of action survives to the surviving plaintiff or against the surviving defendant, and one or more of them dies, the writ or action shall not be thereby abated, but such death being suggested upon the record, the action shall proceed at the suit of the surviving plaintiff against the surviving defendant."

There is no doubt that under this provision of the statutes the court properly denied the motion of the plaintiff in error. The cause of action was one which, not only at common law, but both by the Oregon law, which prevailed in Alaska at the time when the action was commenced, and by the Alaskan Code, which was in force when the court ruled upon the motion, survived the death of a party thereto. Hill's Ann. Laws Or. §§ 369, 370; Act June 6, 1900, c. 786, 31 Stat. 391.

Equally without merit is the contention that the court should have allowed the motion to dismiss on the ground of the misjoinder of Garside and the representatives of the estates of Mahoney and Beaumont with the plaintiffs in the action, and the nonjoinder of Minnie Ross Holman as a party plaintiff. The interest of the latter was acquired two years after the commencement of the action. Her right therefore became subject to the final determination of the action as it was then pending, and, while she might have been brought in by supplemental pleadings, it was no ground to dismiss the action that she was not. Nor can the plaintiff in error complain that parties were joined in the action against him who had parted with their interest in the subject-matter thereof. The misjoinder of the plaintiffs, if misjoinder there were, affected no substantial right of the plaintiff in error. An objection for either nonjoinder or misjoinder comes too late when made for the first time at the trial of the cause. Burbank v. Bigelow, 154 U. S. 558, 14 Sup. Ct. 1163, 19 L. Ed. 51.

The important question in the case is whether the court erred in ruling that the defendants in error had not waived their right to the land in controversy by applying for and obtaining during the pendency of this action a patent for all of their lode claim except that portion which is embraced in the dispute between the parties hereto. The defendants in error in their complaint alleged that they were in possession of the Ready Bullion, No. 2, lode mining claim, with the right to occupy and possess the same; that the plaintiff in error and Duncan had ousted them from a portion thereof, consisting of eight acres, described by metes and bounds, and had applied for a patent for the Drumlummon lode claim, including therein the eight acres in controversy; that the defendants in error had in apt time filed their adverse claim, and had brought the action in support thereof. The opposite parties answered, denying the right of the defendants in error to the possession of the land in controversy, and alleging their right thereto by virtue of the location on May 14, 1895, of the Drumlummon claim. On the trial the defendants in error produced evidence to prove that their location was made on February 4, 1886, and evidence to show their present interest, and then offered in evidence the patent which was issued them on May 18, 1901, for all that portion of their claim save and except the ground in controversy. It does not appear from the record for what purpose the patent was offered. It had been issued during the pendency of the action, and was not referred to in any supplemental pleading. It was offered and received in evidence without objection. It is not pertinent to the present discussion unless it is to be deemed an admission on the part of the defendants in error that they relinquished their claim to all the ground not included in the patent.

It is argued that where two conflicting applications overlap, and, upon application of the owner of either for a patent, adverse proceedings under the statute are instituted by the owner of the other, and proceedings in the land office are thereby stayed, if either party thereafter relinquish the ground in dispute by filing an amended application for patent, it is a waiver of his claim to the ground in controversy, and that if, upon such amended application, a patent be issued from the land office, it can only be regarded as a recognition of the waiver by the officers of the land office. The trial court entertained this view, and intimated that he would have held that by amending their application, and obtaining a patent for all their claim except the disputed ground, the defendants in error waived all right to the latter, but for the decision of the Supreme Court in Last Chance Mining Co. v. Tyler Mining Co., 157 U. S. 683, 15 Sup. Ct. 733, 39 L. Ed. 859. In that case the court, in dealing with the question of the effect of an amendment of the application of the original applicant pending adverse proceedings, said:

"But further, it is contended that the action of the owners of the Tyler claim in amending their application, coupled with the withdrawal of their answer, took them entirely out of the case in the District Court. It is said that they had abandoned all claim to the property theretofore in controversy, that they were really no longer parties to the action, and that it remained simply a case pending between the owners of the Last Chance and the United

States. Such seems to have been the view taken by the Court of Appeals when it held that the judgment was improperly admitted in evidence. We are unable to concur in this view. It may well be doubted whether the amendment filed in the land office has any force or effect during the pendency of the action in the District Court. Section 2326 provides that after the filing of the adverse claim 'all proceedings, except the publication of notice and making and filing of the affidavit thereof, shall be stayed until the controversy shall have been settled or decided by a court of competent jurisdiction, or the adverse claim waived. [U. S. Comp. St. 1901, p. 1430.] As said by this court in Richmond Mining Company v. Rose, 114 U. S. 576, 585, 5 Sup. Ct. 1055, 1059, 29 L. Ed. 273, referring to the action of the officers of the department pending proceedings in court: 'After the decision they are governed by it. Before the decision, once the proceeding is initiated, their function is suspended'. It is suggested by counsel that the abandonment by the owners of the Tyler location of any claim to the disputed territory was, in effect, a waiver of the adverse claim, within the language of the statute, on the happening of which the right of the land office to proceed was restored. But that is not within the letter, even if within the spirit, of the statute. The adverse claim is the claim made by the party opposing the application, and the party to waive the claim is the one who makes it. The obvious meaning is that when an adverse claim is filed—that is, a claim filed by some one opposing the application in whole or in part—the proceedings in the land office shall be stayed until the determination of the dispute by the court in which the action is brought, or the party who has presented such adverse claim shall have in some way waived his opposition to the application. There was no waiver on the part of the parties who filed this adverse claim, and the only way in which any waiver is claimed to have been made was by a proceeding on the part of the applicants in the land office, and every proceeding there was, as we have seen, directed to be stayed. It is doubtless true that if, notwithstanding the pendency of such an action, the land office accepts a reduced application for ground, no part of which is covered by the adverse claim, and in respect to which there is no opposition, and proceeds subsequently, upon such amended application, to grant a patent, there is no one who can object, for the matter is one wholly of procedure between the United States and the applicant, and the former, by granting the patent, waive any irregularity in the procedure."

The difference between that case and the present case is that in the former it was the original application for patent that was amended, whereas in this case the amended application was made by, and the patent was issued to, the adverse claimant. It is in that difference that the difficulty is found in applying the doctrine of that case to this.

The statute (section 2326, Rev. St. [U. S. Comp. St. 1901, p. 1430]) provides in plain terms that the adverse proceedings may be brought to an end in one of three ways: First, by a settlement had between the parties; second, by a judgment of the court; and, third, by a waiver of the adverse claim. In Richmond Mining Co. v. Rose, 114 U. S. 576, 585, 5 Sup. Ct. 1055, 29 L. Ed. 273, Mr. Justice Miller said:

"We can imagine several ways in which it can be shown that the adverse claim is waived, without invading the jurisdiction of the court while the case is still pending. One of these would be the production of an instrument, signed by the contestant and duly authenticated, that he had sold his interest to the other party, or had abandoned his claim and his contest. Or, since the act says that all proceedings shall be stayed in the land office from the filing of the adverse claim, and not from the commencement of the action in the court, within 30 days, such delay of 30 days is made by the statute conclusive of a waiver. A filing in the records of the court by the plaintiff of a plea that he abandons his case or waives his claim might authorize the land office to proceed."

The first of these suggestions of the court contemplates that a waiver may be made by means of an instrument, executed by the contestant, acknowledging that he has "abandoned his claim and his contest," presented, not to the court, but to the land office, for the learned justice refers to it as a method of waiving the adverse claim "without invading the jurisdiction of the court"; and he proceeds thereupon to suggest, as another way in which the waiver may be shown, the production of such an instrument to be filed in the records of the court where the contest is pending. This is in harmony with the ruling of Secretary Lamar, who held that the adverse claim might, pending the action, be voluntarily dismissed in the land office without entering a discontinuance in the court. St. Lawrence Min. Co. v. Albion Consol. Min. Co., 4 Land Dec. Dept. Int. 117. Indeed, it is apparent that the officers of the Land Department regarded the amended applications as waivers of the contested ground both in the Last Chance Case and in the present case, for otherwise it is not to be supposed that they would have issued the patents, in violation of the law, while the actions were pending in the courts. In the Last Chance Case the court gave as one of the reasons for not regarding the amended application as a waiver the fact that it was made, not by the adverse claimant, but by the original applicant, so that, while it.might be within the spirit of the law, it was not within its letter. But the court elsewhere in the opinion gave expression to general views which would seem to sustain the doctrine that such an amendment of an application for patent pending adverse proceedings, whether made by the original applicant or by the adverse claimant, is absolutely void, and that, if not void, it still is not necessarily a waiver of the matter in dispute or determinative of. the contest, but that, if patent be issued thereon, it is a matter which rests purely between the government and the applicant, and affects no right of the adverse party, and that the waiver contemplated by the statute must be one which in express terms acknowledges a relinquishment of all claim to the ground in dispute. It is suggested on the argument that the defendants in error made their amendment in this instance in reliance upon the doctrine of the Last Chance Case. Whatever may have been their purpose, it is very clear that they did not intend to waive their claim, and that they did not suppose that by amending their application and obtaining the patent they had done so; otherwise it is not conceivable that they would have proceeded with the litigation, or have voluntarily offered their patent in evidence. It is equally clear that the plaintiff in error had not been, so far as the record shows, injured or affected by the action of the defendants in error in obtaining their patent, and had not acted thereon to his disadvantage. Upon a careful review of the question, we are not convinced that the trial court erred in its ruling thereon.

The judgment will be affirmed.