## HARRIMAN v. STRAHAN

(No. 1857; June 19, 1934; 33 Pac. (2d) 1067)

For the plaintiff in error, the cause was submitted upon the brief of *Thomas M. Hyde,* of Basin.

For the defendant in error, the cause was submitted upon the brief of *L. S. Strahan,* of Lovell.

BLUME, Justice.

This is a case brought by Henry R. Harriman against L. S. Strahan to recover attorney fees on account of services performed for the defendant. A demurrer was filed to the second amended petition and was sustained by the trial court. The plaintiff elected to stand upon his pleading, judgment of dismissal was entered, and the plaintiff has appealed. The second amended petition is in two causes of action, one based upon a

*quantum meruit* and one upon an oral agreement to pay. The allegations are in substance as follows:

Plaintiff is a duly authorized attorney and has been engaged in the practice of law for upwards of thirty years, and was duly admitted in the State of Washington, in the District of Columbia, and before the United States Supreme Court, but that he was not and is not admitted to practice in the courts of the State of Wyoming, as was well known to defendant; that in a case entitled "State Board of Law Examiners v. L. S. Strahan," the trial court had recommended to the Supreme Court that the defendant should be suspended from the practice of law for the period of two years, and these recommendations had been affirmed; that thereafter and on the 30th day of May, 1932, the defendant employed the plaintiff to assist him in obtaining a reinstatement; that plaintiff worked to that end for a period of nine months prior to his reinstatement on March 15, 1933, and as the result of his work, the period of suspension was reduced by the Supreme Court; that his work included extensive trips with the defendant for the purpose of conferences and to enlist the interest and aid of officials and members of the Wyoming State Bar Association to the end that they might appear in the Supreme Court in order to obtain a petition for rehearing; that his work also included investigation of constitutional questions, with the end in view that, if necessary, the case might be appealed to the Supreme Court of the United States; that defendant agreed to pay for the services thus performed the sum of $1800; that they are actually worth $1500; that defendant has paid only part thereof, leaving due the sum of $826.75.

The decision of the trial court was evidently based on the fact that the plaintiff, while performing the services mentioned in the second amended petition,

was not a member of the Bar of this state and therefore is not entitled to any compensation for the work done by him. It does not clearly appear where plaintiff's services were performed. Inferentially it may be gathered that they were performed within Wyoming while the plaintiff had his domicile therein. The statutes of this state make various requirements necessary to be complied with before a person shall be admitted to the Bar. Among other things it is provided in Section 9-133, R. S. 1931:

"No person shall be deemed admitted to the Bar until he shall have taken an oath to the effect that he will support, obey and defend the Constitution of the United States and the Constitution and laws of this state, and that he will faithfully and honestly to the best of his ability discharge the duties of an attorney and counselor at law."

The only case that has a bearing herein which is cited by the plaintiff is the case of Harland, et al. v. Lillianthal, 53 N. Y. 438. In that case plaintiffs were partners. One had been duly admitted to practice law, and the other was entitled to be admitted, but was not formally enrolled. The court held that plaintiffs should recover for their services, in view of the fact that there was no statutory provision or rule of court forbidding recovery. The case, even if correctly decided, is not in point. It discusses the case of Ames v. Gilman, 10 Metc. 239, does not disagree with it, but distinguishes it on the ground that the law of New York differed from the law of Massachusetts. In the case just cited, Ames v. Gilman, the court construed a provision of the statute similar to that of our section 9-133, quoted above, and held that "this provision contains a precise and explicit prohibition against practicing without being sworn and admitted," and that it prevented the recovery of compensation for services rendered in violation thereof. In 6 C. J. 721, it is said:

"No one is entitled to recover compensation for services as an attorney at law unless he has been fully admitted to practice before the court or within the jurisdiction within which the services are rendered and is an attorney in good standing at the time. This is true although recovery is sought for services rendered as agent. Moreover, it is not enough that the attorney is a *practicing* lawyer. It *must appear further that he* has all the qualifications prescribed by the statute, including the taking of the oath of office, payment of the privilege tax, and similar requirements."

In 4 A. L. R. 1087 and subsequent pages appears a note of the cases decided on the question before us. And it is said on page 1088 as follows:

"But in practically all jurisdictions statutes have been enacted prohibiting persons not licensed or admitted to the bar from practicing law, and under statutes of this kind the great weight of authority is to the effect that compensation for strictly legal services cannot be recovered by one who has not been admitted before the court or in the jurisdiction where the services were rendered."

Should we follow the rule as here stated? We think we should. To do otherwise would, we think, be contrary to the public policy established by the legislature, and leave the bar in this state in a chaotic condition. We have, of course, no reason to doubt that plaintiff was fully competent and able to perform the legal services which he undertook on behalf of the defendant. But however high his standing may be in the courts to which he has been admitted, we cannot make an exception in his case, and cannot apply a rule which, if applied generally, would not be for the best interests of society. And we think, without reference now to plaintiff's individual case, that the rule which he wants us to follow would lead to contrary results, as may be readily seen by a little reflection. The work of attorneys does not consist merely of appearance and labor in the courts. In fact, that represents generally

the smaller part of their work. To permit the free practice of law in this state, aside from that involved in appearing in court, to men not admitted to the bar, might in time result in having a body of men who, like the solicitors in England, would do a large share of the practice of the law. Moreover, we cannot see how we can justly make a discrimination between men who equally fail to comply with the laws of this state. Though a man may be admitted to the bar in other states, he is, when he has failed to comply with the laws of this state, in the same position in this respect as any other man, and if we grant an exemption to one man, we should logically grant it to others who are not, in principle, situated differently, and we would thus be forced to recognize the right to free practice of the law, which does not directly involve appearance in court, on the part of anyone, whether learned or unlearned, and otherwise qualified or not, thus leaving the public in hopeless confusion as to whom to consult in case of necessity. That, of course, would not do. But even if we could properly draw a dividing line between those who have been admitted to practice somewhere and those who have not, it would still be inadvisable and contrary to the public interest to have in the state a body of men engaged in the practice of the law, who are not amenable to the same disciplinary measures as men who have been regularly admitted. Much has been written of late as to steps which should be taken by members of the bar intended to enable it to give better service to the public. No such steps would result in any good, if there were, outside of the bar, a body of men who would be free to pursue the practices which are sought to be corrected. Our laws are not stringent. Men admitted to the bar of other states have been freely admitted to the bar in this state, if properly qualified. Ample opportunity to join has been extended. That, we think, is sufficient. This conclusion

does not interfere, we think, with the rules of comity and with the courtesies extended to attorneys of other states who appear in the courts of this state in a particular case. That situation is, in fact, expressly recognized by our statute. Sec. 9-110, Rev. St. 1931. Nor do we mean to have it inferred from this decision that if a man, actively engaged in the regular practice in another state, is employed by a resident of this state for a specific case or for general advice, will be denied a recovery in this state of the value of his services, even though he may, as incidental to his employment, find it necessary to occasionally come to this state for the better performance of his duty. No such exceptional situation has been shown herein, nor are we called upon to express an opinion thereon. See Harris v. Clark, 81 Ind. App. 494, 142 N. E. 881; Brooks v. Volunteer Harbor etc., 233 Mass. 168, 123 N. E. 511.

Plaintiff argues that the defendant should be held to be estopped from setting up his—plaintiff's—disqualification under discussion, in view of the fact that he had full knowledge thereof. We do not think that any rule of estoppel applies. It is said "that an agreement void as against public policy cannot be rendered valid by invoking the doctrine of estoppel." 13 C. J. 506.

The judgment of the trial court must, accordingly, be affirmed. It is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.